### PEOPLE v. COHEN et al.

(City Magistrates' Court of New York City. December 7, 1911.)

1. CRIMINAL LAW (§ 304*)—EVIDENCE—JUDICIAL NOTICE—JUDICIAL PROCEEDINGS.

On the hearing of a complaint for disorderly conduct tending to a breach of the peace by jostling or assaulting, the court may take judicial notice that while the case was pending a charge of assault by another party was sought to be justified before it because the complaining party had pushed and jostled the defendant when trying to enter a public conveyance.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 295½, 700–717; Dec. Dig. § 304.*]

2. DISORDERLY CONDUCT (§ 1*)—WHAT CONSTITUTES—"TENDING TO A BREACH OF THE PEACE."

Under Consolidation Act (Laws 1882, c. 410) § 1458, declaring that any threatening or insulting behavior in a public place that tends to a breach of the peace, constitutes disorderly conduct, the words "tending to a breach of the peace" mean such behavior on the part of one which might be resented either forcibly or by loud and boisterous language, regardless of what action is in fact taken by those who are subjected thereto; and the offense is committed by a physical interference with

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the complainant leaving an elevator, by an assault by jostling complainant with intent to commit robbery from the person, although the fact of the robbery be in doubt.

[Ed. Note.—For other cases, see Disorderly Conduct, Cent. Dig. §§ 1–7, 9–13; Dec. Dig. § 1.*]

*8.* CRIMINAL LAW (§ 59*)— PARTIES—PRINCIPALS.

Where one of two defendants deliberately stepped in front of complainant, jostled and assaulted her, and impeded her progress in leaving an elevator, and in doing so the other defendant was confederated with her, they were both guilty as principals.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71–74, 76–81; Dec. Dig. § 59.*]

Annie Cohen and another were charged with disorderly conduct. Defendants found guilty.

Chas. S. Whitman and Lucian S. Breckinridge, Deputy Asst. Dist. Atty., both of New York City, for plaintiff.

K. Henry Rosenberg, of New York City, for defendant.

McADOO, Chief City Magistrate. The motion to dismiss this complaint on the law points presented by the able and ingenious counsel for the defense is denied. These objections have hitherto been passed upon by the courts in opinions which it is not necessary for me to review—notably in the Case of Meyers, 71 Misc. Rep. 77, 129 N. Y. Supp. 1099.

This brings me to a consideration of the facts as to the guilt or innocence of the defendants. The established facts in this case are briefly as follows: The complainant and her daughter, residents of Pittsburgh, Pa., were on a shopping tour in the vicinity of Fifth avenue and Thirty-Fourth street. She left the store of Messrs. Forsythe, dealers in dry goods, a short distance from the store of Best & Co., which is located on the northwest corner of Fifth avenue and Thirty-Third street. When she left the Forsythe store she had on her arm a bag of the kind usually carried by women. The inside of this bag had, in addition to the main receptacle, two or three smaller pockets. In one of these there were currency and bills to the amount of $35. Leaving the Forsythe store in company with her daughter, she walked along Fifth avenue to the Best store, and, entering the same, went on an elevator to the second floor, and crossed a portion of this floor to a small room, where she remained some minutes having dresses fitted for her daughter. At the door of this room, as she was leaving, she discovered that her bag was open, and, looking in, found that the money had disappeared. She notified the store authorities, and search was made to find if the same had been mislaid. The money was not found. Later on she was brought into contact with detectives from police headquarters, which resulted in the arrest of the two defendants. There is evidence of herself and daughter, and of John Temple, the starter of the elevators at Best's store, that when she and her daughter entered the elevator, in which at that time there was the operator and one other woman, she was followed by two women. She identifies one of these women as the defendant Cohen. Her identification of the other woman is not so complete. Her daughter gives rea-

sons for believing that these women were the two who were in the car; but, to my mind, all doubt as to their identity is brushed aside by the positive and emphatic testimony of Temple, who swears that the women followed the complainant and her daughter into the elevator, that he had ample opportunity to see them face to face, and that he knew them from having seen them in the store on former occasions.

The complainant and her daughter and Temple all agree in their testimony as to the location of the occupants of the car before and after it had started for the second floor. The operator stood to the left of the door operating the machinery; behind him stood the defendant Cohen; behind her the complainant. The complainant testifies that there was no change in the conditions during the progress of the car to the second floor. In order to leave the car, it was necessary for the complainant to step in a diagonal or sidewise direction from behind the operator, so as to face the door. The complainant and her daughter positively testified that at this instant the defendant Cohen deliberately stepped in front of the complainant, to impede her progress, and jolted or pushed her. The complainant did not resent the push by any remarks; but she noticed it at the time, and remarked about it afterwards, and before she left the store, to her daughter.

The starter of the elevator testifies that the elevator in question does not run beyond the third floor, and that the average time for it to make a complete run is about a minute, unless there are a number of people to be taken on the third and second floors. He testifies that he was standing by the shaft when the elevator returned, and that it was not more than a minute from the time it had left, and that even before he noticed the approach of the elevator he saw the two defendants coming down the stairs adjacent to the elevator shaft at a pace so fast that it might be called running; that they went over to a table near by where there were clothing articles for small children exposed for sale; that they remained there but a short time, and when he next looked they had left the store.

[1, 2] The question submitted to me is whether or not these facts justify a conviction for disorderly conduct tending to a breach of the peace, under section 1458 of the Consolidation Act. What is the meaning of the words "tending to a breach of the peace"? Is it not such action or behavior on the part of one which might be resented forcibly by another? Or which might not be resented either by physical force or loud and boisterous and indecent language by either? To my mind it is entirely immaterial what action is taken by those who are subjected to this conduct and annoyance. While one woman in the position of the complainant might have immediately resented this action, either by way of loud protest or physical force, it does not follow that because the complainant said nothing about it at the time that it was robbed of the character given it by the law.

In the indecent crowding, to which we are all subjected, in the transit facilities of this city, below, above, and on the surface, we are often rudely pushed and jostled more or less unintentionally by others. But there is no doubt in my mind that under the law where the

jostling and pushing even in those cases is intentional and deliberate that it constitutes a disorderly act.

I must take judicial notice that while this case has been pending two citizens came before me, one charging the other with assault. The man who made the assault justified it because the other had unduly pushed and jostled him when trying to enter a public conveyance. In this case both were respectable men; the defendant having lost his temper under conditions to which a large class of our public have become tolerant by education and experience.

The case before me, however, is entirely different. Here is physical interference of the complainant, an assault by the jostling and pushing of complainant, I am convinced with deliberation and intention and for an unlawful purpose, namely, to commit robbery from the person. While there is no evidence that the defendant was seen to touch the person or the property of the complainant, I have to answer the question whether or not—convinced as I am that they were acting in concert for an unlawful purpose—they are both principals in this act. The failure of the complainant to examine her handbag from the time she left the other store on Fifth avenue until a considerable time after when she came from the trying-on room of Best & Co. raises a doubt as to whether or not these defendants succeeded in robbing the complainant.

[3] I am satisfied beyond a reasonable doubt that both these defendants followed the complainant and her daughter into the elevator for the purpose of robbery, that the defendant Cohen, deliberately and with intention to do so, stepped in front of her, jostled and assaulted her, and impeded her progress in leaving the elevator, for that purpose, and that in doing so the defendant Stern was confederated with her, and therefore that they are both principals to the transaction; and I find them guilty.